IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JABARI KNOX, )
)
      Plaintiff, )
)   Case No. 25-cv-3130
      v. )
)   Honorable Joan B. Gottschall
CITY OF CHICAGO, et al., )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Jabari Knox has filed an eleven-count complaint against the City of Chicago and five City employees, asserting claims stemming from his termination. Dkt. No. 1. The court has four motions before it. Two are Federal Rule of Civil Procedure 12(b)(6) motions to dismiss the complaint for failure to state a claim. Defendant Amber Wilson has also filed a pro se motion to dismiss for failure to timely serve her with the summons and complaint. And all defendants move to stay discovery pending the court's decision on their Rule 12(b)(6) motions. For the reasons that follow, the court grants the Rule 12(b)(6) motions in part and denies them in part, denies Wilson's motion to dismiss for untimely service, and denies the motions to stay discovery as moot.

### I. BACKGROUND

Knox held the title of Director of License Administration until the City terminated his employment on a date not given in the complaint. *See* Compl. ¶¶ 1–4, 15–38, Dkt. No. 1. He names as defendants the City of Chicago and five city employees, each of whom is sued in an individual capacity. *See* Compl. ¶¶ 9–14. The complaint identifies the individual defendants' titles with varying levels of specificity: Amber Wilson, a City employee; Natashee Scott, Assistant Deputy Mayor of Community Safety; Garien Gatewood, a manager; Anna Valencia,

City Clerk; and Kathryn O'Connell, Chief of Staff in the Office of the City Clerk. *See* Compl. ¶¶ 10–14. Wilson represents in her pending motion to dismiss that she serves as a Policy Advisor in defendant Gatewood's office. Dkt. No. 55 at 1.

Perhaps because only a "short and plain statement" is required, Fed. R. Civ. P. 8(a)(2), the complaint does not set out the alleged facts in great detail. Knox alleges that defendants engaged in "a concerted effort . . . to defame and discredit [him] based on knowingly false and malicious allegations." Compl. ¶ 1. Defendants are alleged to have conspired to fabricate these allegations in a successful effort to cause Knox to be fired. Compl. ¶ 3.

According to the complaint, Knox filed a police report (date not specified) naming defendant Wilson "due to domestic violence and harassment." Compl. ¶ 16. Several weeks later (how many is not pleaded), Wilson, allegedly acting on defendant Scott's advice, retaliated by filing a police report accusing Knox of abuse and harassment. Compl. ¶ 17. Knox pleads that Wilson's police report was false, as was an affidavit she prepared accusing him of abuse. Compl. ¶ 17. He further alleges that Wilson published these allegations and statements to Scott and Gatewood, who in turn republished them to the co-defendants and other third parties, including unnamed city "Police Chiefs," the City's Human Resources (HR) Director, and counsel for the City. *See* Compl. ¶¶ 19–26.

Separately, Knox alleges that defendant O'Connell fabricated statements about his job performance, calling him "unprofessional" and "unfit" for his position. Compl. ¶ 31. O'Connell allegedly communicated those statements to the City's counsel and HR Director despite the fact that Knox had no documented disciplinary history nor any written performance evaluations that would justify them. Compl. ¶¶ 27–32. "These false statements," in turn, allegedly "contributed directly to the decision to terminate Plaintiff's employment." Compl. ¶ 33.

Counts I–IV of the complaint assert constitutional claims under 42 U.S.C. § 1983. Knox pleads a First Amendment retaliation claim (duplicated in Counts I and II), two claims under the Fourteenth Amendment's Due Process Clause (Counts III and IV), and a claim under the Equal Protection Clause of the Fourteenth Amendment. Compl. ¶¶ 39–73. Count V is a 42 U.S.C.

2

§ 1985(3) claim for conspiracy to violate Knox's constitutional rights. Compl. ¶¶ 74–80. In Count VI, Knox brings a claim of sex discrimination in employment under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e et seq. Compl. ¶¶ 81–87.

Counts VII–XI arise under Illinois law. *See* 28 U.S.C. § 1367(a) (supplemental jurisdiction). Count VII is a defamation of character claim. Count VIII is a tortious interference with contract claim, and in Count IX, Knox pleads a claim for intentional infliction of emotional distress. Finally, Count X asserts a claim for indemnification against the City pursuant to 745 Ill. Comp. Stat. 10/9-102, and Count XI seeks to hold the City liable for the individual defendants' conduct on a respondeat superior theory.

## II. TIMELINESS OF SERVICE OF PROCESS UPON WILSON

Knox filed his complaint on March 24, 2025. Under Rule 4(m) of the Federal Rules of Civil Procedure, he had ninety days to serve defendants with the complaint and summons, that is, until Monday, June 23, 2025. *See* Fed. R. Civ. P. 6(a)(1)(C). As discussed below, the parties agree that Knox did not meet that deadline. Wilson moves to dismiss for failure to perfect timely service, and Knox asks the court to extend the Rule 4(m) deadline and deem service upon Wilson timely.

### A. Standard for Extending the Service Deadline

Rule 4(m) provides for extending the deadline to serve the summons and complaint "if the plaintiff shows good cause for the failure" to serve the complaint within ninety days. Fed. R. Civ. P. 4(m). The Seventh Circuit has identified the following non-exhaustive list of factors courts ordinarily consider when deciding whether to extend the Rule 4(m) deadline:

> [W]hether the defendant's ability to defend would be harmed by an extension; whether the defendant received actual notice; whether the statute of limitations would prevent refiling of the action; whether the defendant evaded service; whether the defendant admitted liability; whether dismissal will result in a windfall to a defendant; whether the plaintiff eventually effected service; whether the plaintiff ever requested an extension from the

3

court due to difficulties in perfecting service; and whether the plaintiff diligently pursued service during the allotted period.

*Jones v. Ramos*, 12 F.4th 745, 749 (7th Cir. 2021) (citing *Cardenas v. City of Chicago*, 646 F.3d 1001, 1006–07 (7th Cir. 2011); other citation omitted).

**B. Good Cause**

The parties do not discuss the Rule 4(m) factors listed above, nor any similar factors, in their briefing. Under Rule 4(m), good cause means a "valid reason for delay, such as a defendant's evading service." *Coleman v. Milwaukee Bd. of Sch. Directors*, 290 F.3d 932, 934 (7th Cir. 2002). Knox's attorney caused a summons to be issued on March 31, 2025. Dkt. No. 6. Knox subsequently filed a process server's affidavit in which the process server averred that he left the summons and complaint at Wilson's "usual place of abode" with a person named Antoinette Pacheco. Dkt. No. 8 at 1. Knox and Wilson now agree that the address listed on the process server's affidavit dated April 3, 2025, was not Wilson's residence or her usual place of abode at the time of service, and Wilson avers in an affidavit that she does not know Pacheco. *See* Wilson Mot. to Dismiss, Dkt. No. 55; Resp. to Wilson Mot. to Dismiss 2–3, Dkt. No. 60. It appears that the process server delivered the summons and complaint to someone living at Wilson's former address. *See* Wilson Aff. ¶¶ 3–5, Oct. 10, 2025, Dkt. No. 62-1.

Knox's attorney represents that at some point (no date is given), counsel for Knox's co-defendants advised that Wilson had not been served. Knox argues that the deadline to serve the summons and complaint should be extended because he "diligently attempted service but encountered delays outside of his control, including locating Wilson who, as a pro se litigant, was not represented by counsel." Resp. to Wilson Mot. to Dismiss 2. What Wilson's then-pro se status has to do with the timeliness of Knox's efforts to serve her is mysterious, as is the basis of the representation that the circumstances were out of Knox's control. A plaintiff's duty to effectuate service of process does not depend on whether the defendant does, or does not, have a lawyer. No one has suggested that Wilson was evading service. As far as this record shows, Wilson moved from one residence to another at some point before this case was filed. Knox's

4

process server delivered the summons and complaint to Wilson's former address and then incorrectly described it as her current usual place of abode—all for reasons that remain unexplained. No attempt has been made to show that using the incorrect address was a reasonable mistake on Knox's part. Without more information, the record does not support a finding of good cause under Rule 4(m). *See Coleman*, 290 F.3d at 934.

## C. Discretionary Extension

Courts have discretion to extend the Rule 4(m) deadline in the absence of a showing of good cause based on a balancing of the hardships. *Henderson v. United States*, 517 U.S. 654, 662 (1996) (quoting 1993 Advisory Committee Note to Fed. R. Civ. P. 4); *see, e.g.*, *Coleman*, 290 F.3d at 933–34; *Jones*, 12 F.4th at 749 (quoting *Cardenas*, 640 F.3d at 1007; other citation omitted). Wilson asserts that an extension will prejudice her, but she does so in a conclusory manner. *See* Wilson Mot. to Dismiss 1–3. Nothing of any significance occurred in the two months between June 2025, the service deadline, and August 2025, when Wilson was served. Rather, Wilson filed her pending motion to dismiss in September 2025, which is also the month in which her co-defendants filed their pending motion to dismiss the complaint. Furthermore, although Wilson filed the instant motion to dismiss pro se, an attorney has since appeared on her behalf. Wilson has not identified any specific prejudice she will suffer if an extension is granted.

On the other side of the ledger, Knox's attorney appears on this record to have acted promptly upon learning of the defect in service. She represents that she caused an alias summons to be issued on August 11, 2025, and had the process server run a skip trace to determine Wilson's current address. Resp. to Wilson Mot. to Dismiss 2. The docket sheet confirms that the Clerk issued an alias summons, *see* Dkt. Nos. 35, 41, and Wilson confirms that she was served with the alias summons and the complaint on August 22, 2025. Wilson Mot. to Dismiss 1.

While Wilson has not articulated any specific prejudice she will experience, Knox will suffer significant prejudice absent a Rule 4(m) extension because the applicable statute of

limitations now bars at least one of his claims, meaning Knox would be unable to refile it against Wilson. Specifically, Knox's 300-day window for filing a Title VII claim has closed. Weighing the foregoing considerations in their totality, the balance of hardships strongly favors extending the Rule 4(m) deadline to deem service upon Wilson timely. The court does so. Wilson's motion to dismiss the complaint against her for untimely service is denied.

### III. FAILURE TO STATE A CLAIM

All defendants, including Wilson, move to dismiss Knox's complaint for failure to state a claim. *See* Wilson Mot. Dismiss 3 (joining co-defendants' motion to dismiss). Defendants' Federal Rule of Civil Procedure 12(b)(6) motions test the complaint's sufficiency rather than the case's merits. *See Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337–38 (7th Cir. 2024). The notice pleading standard adopted by the Federal Rules of Civil Procedure requires every complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In contrast, "a formulaic recitation of the elements of a cause of action" does not satisfy the plausibility standard; nor do "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quotations omitted).

### A. First Amendment Retaliation Claims (Counts I and II)

Knox alleges in Counts I and II that the individual defendants retaliated against him for engaging in speech the First Amendment protects, namely filing a police report against Wilson alleging domestic abuse.[1] *See* Compl. ¶¶ 16, 41; Mem. Opp'n Mot. Dismiss 9–11, Dkt. No. 47.

---

[1] As an initial procedural matter, except for their headings, Counts I and II are substantively identical. *See* Compl. pp. 6–8. Knox nevertheless argues that Count II is a separate claim for a "stigma-plus" due process violation. *See* Mem. Opp'n Mot. Dismiss 13–15. That is not the claim plaintiff pleaded, however, and it is settled that a plaintiff cannot amend his complaint in a brief or memorandum responding to a motion to dismiss it. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347–48 (7th Cir. 2012). Counts I and II will be analyzed as they are

(continued on next page)

Broadly speaking, the Free Speech Clause of the First Amendment "prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Hou. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (citation modified) (quoting *Nieves v. Bartlett*, 587 U. S. 391, 393 (2019); other citation omitted). Where, as here, the speaker/plaintiff was a public employee, Supreme Court First Amendment doctrine entails a balancing among the competing legitimate interests of the government/employer and its employees, who do not wholly shed the protections of the First Amendment when they accept the call to public service. *See generally Garcetti v. Ceballos*, 547 U.S. 410, 417–21 (2006) (discussing doctrinal history and the balancing of interests).

To state a First Amendment retaliation claim, a public-employee plaintiff must plausibly plead, among other elements, that he engaged in speech protected by the First Amendment. *Davis v. City of Chicago*, 889 F.3d 842, 845 (7th Cir. 2018). To do that, the plaintiff must allege three things: "(1) he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Id.* (citation modified) (quoting *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013)).

Defendants contend that Knox has not pleaded enough facts to establish that he was speaking on a matter of public concern.[2] This argument draws on the doctrinal distinction between speech on a matter of public concern, which is protected under First Amendment retaliation law, and speech on a matter of "purely private concern," which is not. *See Kilborn v. Amiridis*, 131 F.4th 550, 559 (7th Cir. 2025); *Bivens v. Trent*, 591 F.3d 555, 560–61 (7th Cir. 2010). In response, Knox quotes a case defining a matter of public concern as "any matter of

---

pleaded, that is, as duplicative First Amendment retaliation claims. The court implies nothing about Knox's unpleaded "stigma-plus" due process claim.

[2] Illinois police officers have a legal duty to report misconduct, and the Seventh Circuit held in *Forgue v. City of Chicago*, 873 F.3d 962, 967 (7th Cir. 2017), that reports of police misconduct ordinarily fall within the scope of an officer's employment for purposes of a First Amendment retaliation claim. The complaint here asserts that Knox served as a Director of Licensing, but it provides no details on his responsibilities. Nothing in the complaint or briefing indicates that Knox's position with the City obligated him to report allegations of domestic abuse.

7

political, social, or other concern to the community." *Snyder v. Phelps*, 562 U.S. 443, 453 (7th Cir. 2011), *quoted in* Resp. Mot. to Dismiss 10. Following this quotation, Knox asserts without further elaboration or citation that domestic violence is a matter of public concern to the community.

At a high level of generality, the community at large has a legitimate interest in crime, its causes, its prevalence, its prevention, and related matters. But the First Amendment analysis takes into account more than the broad topic on which a public employee was speaking. The speech's "content, form, and context" must be analyzed. *Connick v. Myers*, 461 U.S. 138, 147–49 & n.10 (1983). The speech's content "is the most important factor" but "the fact that an employee speaks up on a matter that may be deemed of public import does not automatically render his remarks on that subject protected" from retaliation by the First Amendment. *Bivens*, 591 F.3d at 560–61 (citation modified). In *Connick*, for example, a case brought by a former prosecutor who alleged she was retaliated against for circulating a survey to her coworkers asking them about various grievances with their supervisors, the Supreme Court refused to "presume that all matters which transpire within a government office are of public concern" because indulging that presumption "would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case." *Connick*, 461 U.S. at 149.

The Supreme Court's First Amendment retaliation jurisprudence teaches that the "public concern element must relate to a community concern and is not satisfied by 'merely a personal grievance of interest only to the employee.'" *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008) (citation modified) (quoting *Sullivan v. Ramirez*, 360 F.3d 692, 699 (7th Cir. 2004)). Knox's response memorandum fails to engage meaningfully with this distinction or with the context-sensitive inquiry *Connick* and its progeny require. *See* Mem. Opp'n Mot. Dismiss 9–11. Knox cites no First Amendment case in which the plaintiff alleged employer retaliation for filing a police report.

8

*Houskins* is such a case.  The Seventh Circuit analyzed a First Amendment retaliation claim brought by a social worker who filed a police report alleging that a corrections officer assaulted her.  *See Houskins*, 549 F.3d at 483–85.  Based on a summary judgment record, the Seventh Circuit held that the report, when considered in context, was a personal grievance under the *Connick* context-based inquiry.  *Id.* at 491–92.  The police report, the opinion explains, "was nothing more than Houskins's personal grievance against Keith in order to have him arrested for striking her . . . [N]othing in the record indicate[d] that Houskins's purpose in filing the police report was to bring to light any [public] wrongdoing by the Sheriff . . . ."  *Id.* at 492.  As *Houskins* makes clear, filing a police report alleging assault does not automatically equate to speaking on a matter of public concern.

Although a complaint is not required to include enough evidence to survive summary judgment, under *Twombly* and *Iqbal*, *supra*, it must plead enough factual material to make out a plausible claim that the plaintiff was speaking on a matter of public concern, rather than raising a personal grievance.  *See Rodriguez v. City of Chicago*, 2021 WL 3472513, at *6 (N.D. Ill. Aug. 5, 2021).  Knox points to nothing in his complaint giving rise to such an inference, and the court has found nothing.  Knox has articulated no explanation of how his police report was an attempt to raise a matter of concern to the wider community, instead of an attempt to have Wilson arrested.  *See Houskins*, 549 F.3d at 492.  The complaint's First Amendment retaliation claims are dismissed.  *See Rodriguez*, 2021 WL 3472513, at *6 (dismissing similar First Amendment retaliation allegations for failure to state a claim).

**B. Due Process Claim (Count III)**

The Due Process Clause of the Fourteenth Amendment, forbids "any State" from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const., amend. XIV, § 1.  To state a claim of a procedural due process violation, a plaintiff must plausibly allege "(1) a cognizable property [or liberty] interest; (2) a deprivation of

that . . . interest; and (3) a denial of due process." *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004) (citing *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993)).

The individual defendants argue that Knox was an at-will employee who had no reasonable expectation of continued employment, and his complaint therefore fails to allege that he was deprived of a cognizable liberty or property interest. Mem. Supp. Mot. to Dismiss 10–11, Dkt. No. 32. Due process property interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). A plaintiff must have "more than an abstract need or desire" and "more than a unilateral expectation" for a property interest to exist; the person "must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (citation modified) (quoting *Roth*, 408 U.S. at 577)). In the context of public employment, "property interests exist when an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met." *Buttitta*, 9 F.3d at 1202 (citation modified) (quoting *Colburn v. Trs. of Ind. Univ.*, 973 F.2d 581, 589 (7th Cir. 1992)).

Knox pleads that he "was a Director of License Administration . . . in good standing until his wrongful termination," and that in terminating him, the City "failed to investigate or follow lawful employment procedures." Compl. ¶¶ 15, 35. What those alleged procedures were, the complaint does not say. Nor does Knox specify what they were in his response brief. Instead, Knox points to his complaint's rote recitals of the elements of a due process claim. *See* Compl. ¶¶ 60–61. The complaint's "threadbare recitals of the elements" of a due process claim do not, without more, satisfy Knox's obligation to plead a plausible claim. *See Iqbal*, 556 U.S. at 678–79.

Knox argues that he has pleaded that there was a de facto understanding that City employees were entitled to notice and administrative process before termination, but he points to

no specific facts in his complaint lending credence to this argument. *See* Resp. Opp'n Mot. Dismiss 15–18, Dkt. No. 47. Knox has identified no contract, statute, or regulation creating a cognizable property interest, and he pleads no facts supporting a plausible inference that the City had a de facto tenure-like policy. *See Milwaukee Police Ass'n v. City of Milwaukee*, 856 F.3d 480, 481–82 (7th Cir. 2017); *Confederation of Police v. City of Chicago*, 547 F.2d 375, 375–76 (7th Cir. 1977); *O'Gorman v. City of Chicago*, 848 F. Supp. 2d 853, 861–62 (N.D. Ill. 2012); *Brownlee v. City of Chicago*, 983 F. Supp. 776, 781–82 (N.D. Ill. 1997). Accordingly, the complaint fails to state a plausible claim that Knox had a cognizable property interest in his continued employment with the City. Count III is dismissed.[3]

## C. Equal Protection Claim (Count IV)

Count IV asserts an Equal Protection Clause claim that the individual defendants intentionally discriminated against Knox based on his sex (male). Knox pleads that defendants terminated him "without affording him the same procedural protections or benefit of the doubt given to female employees." Compl. ¶ 69. "[R]atified to help protect the equality that had been won in the Civil War," the Fourteenth Amendment's Equal Protection Clause "is most familiar as a guard against state and local government discrimination on the basis of race, national origin, sex, and other class-based distinctions." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 588 (7th Cir. 2021) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012)).[4] An Equal Protection claim for sex discrimination requires a showing of intentional discrimination on the

---

[3] In his opposition to defendant's motion to dismiss, Knox asserts in a single conclusory sentence (no citation is provided) that he has pleaded a deprivation of a protected liberty interest. *See* Resp. Opp'n Mot. Dismiss 13. The complaint pleads no liberty deprivation, however; it alleges deprivations of a "property interest." *See* Compl. ¶¶ 60–62. Not only is Knox's legal argument "perfunctory and underdeveloped" and therefore waived; it is also not properly before the court because, as discussed earlier, a response brief may not be used to amend a complaint. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (citing *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009)) (waiver). The court intimates no view on the merits of Knox's unpleaded claim that he was deprived of a liberty interest.

[4] A plaintiff may also proceed on a class-of-one equal protection theory by showing that the plaintiff "was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *FKFJ*, 11 F.4th at 589 (quotation omitted); *see id.* at 588–89 (discussing Seventh Circuit jurisprudence in this area). Knox does not plead a class-of-one equal protection claim.

11

basis of the plaintiff's sex. *Est. of Harris v. City of Milwaukee*, 141 F.4th 858, 872 (7th Cir. 2025) (citing *de Lima Silva v. Wis. Dep't of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019)); *see also Locke v. Haessig*, 788 F.3d 662, 669–70 (7th Cir. 2015) (discussing intentional discrimination requirement as it applies to claims against supervisors).

Defendants argue that Knox's complaint is deficient because it does not identify a similarly-situated non-male employee who received better treatment. *See* Mem. Supp. Mot. Dismiss 13–14, Dkt. No. 32. For support, defendants cite two cases decided at the summary judgment stage. *See Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005); *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003); *see also Britt v. Anderson*, 21 F. Supp. 3d 966, 973 (N.D. Ill. 2014).

Defendants conflate the summary judgment and pleading standards. The Seventh Circuit has held that "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case" of discrimination at the complaint stage, for in order to prevent dismissal under Rule 12(b)(6), "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of the plaintiff's sex." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). To state a plausible claim, Knox did not need to identify a similarly situated comparator in the complaint. *See id.*; *Brown v. Budz*, 398 F.3d 904, 916–17 (7th Cir. 2005).

The complaint in *Brown*, on which defendants rely, made equally broad, but not entirely conclusory, allegations of differential enforcement of "policy" based on inmates' race, and the Seventh Circuit held that the complaint stated a claim. *See Brown*, 398 F.3d at 916. Similarly, Knox pleads that defendants gave the "benefit of the doubt" to non-males who reported domestic abuse allegations but not to males who made similar reports. Compl. ¶ 69. Like the *Brown* complaint, Knox's complaint includes enough factual material to raise his right to relief above the speculative level. *Contrast Britt*, 21 F. Supp. 3d at 973–74 (dismissing complaint for failure

12

to plead "any other" facts rendering an inference of intentional discrimination plausible). Defendants' motion to dismiss Count IV is denied.[5]

**D. Civil Rights Conspiracy Claim (Count V)**

Count V alleges a 42 U.S.C. § 1985(3) claim that defendants conspired to violate Knox's Equal Protection rights. *See* Compl. ¶¶ 74–80. Defendants invoke the intra-corporate conspiracy doctrine, which is grounded in the purposes of § 1985(3), a remedial statute passed shortly after the Civil War. *See generally Ziglar v. Abbasi*, 582 U.S. 120, 150 (2017). Under the doctrine, at least one alleged co-conspirator must be outside of the municipal corporation for a § 1985(3) claim to lie. *See Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 642 (7th Cir. 2006), abrogated on other grounds by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) (citing *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990)); *see Travis*, 921 F.2d at 110–11.

The complaint states that the five individual defendants acted in the course and scope of their employment with the City of Chicago (a municipal corporation) at all relevant times. *See* Compl. ¶¶ 8–14. Those allegations foreclose Knox's § 1985(3) claim by operation of the intra-corporate conspiracy doctrine. *See, e.g.*, *Strauss v. City of Chicago*, 346 F. Supp. 3d 1193, 1209–10 (N.D. Ill. 2018); *Allen v. City of Chicago*, 828 F. Supp. 543, 564 & n.8 (N.D. Ill. 1993); *Williams v. Cook Cnty.*, 2006 WL 1806198, at *3–4 (N.D. Ill. June 29, 2006). Knox argues briefly that his allegations support a § 1985(3) claim because "invidious discrimination" is alleged, but he has waived this argument by failing to develop it and support it with a citation to pertinent legal authority. *See* Resp. Opp'n Mot. Dismiss 23–24; *White v. United States*, 8 F.4th 547, 552–53 (7th Cir. 2021). Count V is dismissed.

---

[5] The court rejects the individual defendants' argument that the Equal Protection Clause affords Knox no relief because he was allegedly appointed to a policymaking position. Defendants base this argument on cases construing an exception enacted by Congress in Title VII. *See, e.g.*, *Americanos v. Carter*, 74 F.3d 138 (7th Cir. 1996). The Equal Protection Clause contains no comparable exception, as courts have recognized. *See Sailsbery v. Vill. of Sauk Vill.*, 2016 WL 4701446, at *4 (N.D. Ill. Sept. 8, 2016); *Hanson v. Milton Twp.*, 177 F. Supp. 3d 1096, 1103 (N.D. Ill. 2016), reconsidered in part on other grounds, 2017 WL 11887065 (N.D. Ill. Jan. 24, 2017).

**E. Title VII claim (Count VI)**

Defendants do not contend that the complaint's Title VII claim is defective as pleaded. Rather, they raise two arguments based on matters extrinsic to the complaint: (1) that Knox failed to exhaust his administrative remedies with the Equal Employment Opportunity Commission (EEOC) before filing suit, and (2) that Knox was a policymaking official exempt from Title VII's anti-discrimination protections.

The filing of a charge of discrimination and receipt of a right to sue letter from the EEOC are necessary preconditions to filing suit under Title VII. *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 487 (2015). Although the complaint does not (and did not have to) say anything about a right to sue letter, Knox concedes in his response brief that he had not yet received a right to sue letter. *See* Resp. Opp'n Mot. Dismiss 24–26. The record does not reveal whether the EEOC has since issued a right to sue letter. Knox blames the City for delaying responding to his charge of discrimination with the EEOC, an accusation the City denies. *See Id.* at 25; Reply Supp. Mot. Dismiss 13, Dkt. No. 59.

The court need not determine on whom the finger of blame rests because a stay is the proper remedy when a Title VII claim is filed before the plaintiff receives a right to sue letter from the EEOC. *See Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011); *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995); *Czarniecki v. City of Chicago*, 633 F.3d 545, 550–51 (7th Cir. 2011). If Knox has not received a right to sue letter by now, dismissal would be the wrong remedy. The motion to dismiss Count VI for failure to exhaust administrative remedies is therefore denied.

Defendants also contend that Knox falls into an exception to Title VII's coverage, embedded in the definition of "employee," for certain policymaking officials. *See* 42 U.S.C. § 2000e(f); *Opp v. Off. of State's Att'y of Cook Cnty.*, 630 F.3d 616, 620–22 (7th Cir. 2010); *Americanos v. Carter*, 74 F.3d 138, 143–44 (7th Cir. 1996). Defendants represent (this is not alleged in the complaint) that the City classified Knox as a policymaking employee exempt from

14

political patronage protections.  Mem. Supp. Mot. Dismiss 16, Dkt. No. 32.  Knox disputes this and represents that his duties were "clerical" and "ministerial."  Resp. Opp'n Mot. Dismiss 26.

The question of whether Title VII's policymaking exception applies to Knox was also contested before the EEOC.  Since the purpose of the Title VII exhaustion requirement is to foster expeditious resolution by the EEOC of disputes before they reach the courts, this court declines to rule on Knox's Title VII employee status unless and until the EEOC issues a right to sue letter (assuming that it has not done so already).  *See Mach Mining*, 575 U.S. at 486–87. This portion of defendants' motion to dismiss Count VI is accordingly denied without prejudice.

## F. Local Government Immunity (Counts VII–IX)

Unlike the foregoing counts, Counts VII–IX are intentional tort claims brought under Illinois law.  Compl. ¶¶ 88–113.  This court therefore applies the law of Illinois as explicated by the Illinois Supreme Court and the Illinois appellate court.  *See, e.g.*, *Wilson v. City of Chicago*, 758 F.3d 875, 889 (7th Cir. 2014).  Among other arguments, defendants contend that they enjoy immunity under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Immunity Act").  745 Ill. Comp. Stat. 10/1-101 et seq.  Knox's tort claims, defendants argue, are predicated on their communication of knowingly false harmful information.  Knox does not dispute this characterization of his state law claims.

Section 10/2-210 of the Tort Immunity Act provides, "A public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material."  As Knox stresses, he does not allege negligent misrepresentation or other negligent conduct; he claims that the individual defendants intentionally and maliciously communicated false statements about him.  The parties' dispute over immunity therefore boils down to whether the intentionally false statements alleged in Knox's complaint fit the Tort Immunity Act's "provision of information" category.  745 Ill. Comp. Stat. 10/2-210.  Knox contends, without citing authority, that this provision immunizes

15

only negligent, as contrasted with intentional, conduct. But Illinois courts construe the phrase "[p]rovision of information, [as] a separate category from 'negligent misrepresentation' under the [Immunity] Act," and this immunity affords a broad protection to public employees acting within the scope of their employment." *Masters v. Murphy*, 176 N.E.3d 911, 916–17 (Ill. App. Ct. 1st Dist. 2020) (citing *Goldberg v. Brooks*, 948 N.E.2d 1108, 1114 (Ill. App. Ct. 1st Dist. 2011)).

For immunity to bar a claim, three things must be established: the party invoking immunity "[(1)] was a public employee who (2) provided information while (3) acting within the scope of her employment." *Id.* at 916. The complaint here confirms that all individual defendants were public employees of the City of Chicago and that they were acting in the course and scope of their employment at all relevant times. Compl. ¶¶ 10–14. Furthermore, the gravamen of Knox's tort claims is that individual defendants provided information, alleged to be maliciously false, about him to others.

The Illinois appellate court's immunity analysis in *Masters* provides guidance here. Similar to Knox, Robin Masters filed a defamation claim and a claim for intentional interference with an existing relationship against a fellow corrections officer. *Masters*, 176 N.E.3d at 913–14. Masters alleged that the defendant falsely and maliciously told a supervisor that she, Masters, had broken jail rules and given an inmate access to keys. *Id.* Like Knox, Masters alleged that she lost her job as a result of the defendant's false accusations. *Id.* The defendant correction officer claimed immunity under § 10/2-210 of the Immunity Act. The Illinois appellate court ruled that § 10/2-210 barred Masters' claims on the face of her complaint, notwithstanding her allegations that the defendant intentionally and maliciously lied about her. *Id.* at 917.

As in *Masters*, 10/2-210 immunizes the individual defendants from Knox's defamation, intentional interference with contract, and intentional infliction of emotional distress claims pleaded in his complaint. Counts VII–IX are accordingly dismissed. The court need not reach defendants' alternative arguments for dismissing Counts VII–IX.

16

### IV. CONCLUSION

For the reasons stated, defendant Amber Wilson's motion to dismiss the complaint for failure timely to perfect service, Dkt. No. 55, is denied. Defendants' motions to dismiss the complaint for failure to state a claim, Dkt. Nos. 55 and 32, are granted in part and denied in part. Defendants' motion to stay discovery, Dkt. No. 42, pending a ruling on their motion to dismiss is denied as moot.

Consistent with the above rulings, The court orders that —

- Counts I–III of the complaint are dismissed;
- Count IV (Equal Protection) remains pending;
- Count V (conspiracy) is dismissed;
- the motion to dismiss Count VI for failure to receive a right to sue letter is denied;
- the motion to dismiss Count VI on the ground that plaintiff was not a policymaking employee is denied without prejudice; and
- Counts VII–IX are dismissed.

The parties are instructed to file a joint status report within one week, on or before March 24, 2026, indicating whether plaintiff has received a right to sue letter.

Date: March 17, 2026

/s/ Joan B. Gottschall
United States District Judge